

FILED
OCT 19 2017
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| MARKO KOCIC, ) | Case No. 1:17-MJ-476 |
| ) | |
| Defendant. ) | |

## AFFIDAVIT IN SUPPORT OF A
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Brandon H. Creech, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1. I am a Special Agent with Homeland Security Investigations ("HSI") currently assigned to the Office of the Special Agent in Charge of Washington, D.C. and Virginia. My duties at HSI include the investigation of immigration-related offenses, including criminal violations of immigration and naturalization laws. During the course of my investigations into such crimes, I have spoken with dozens of confidential informants and cooperating witnesses, conducted physical surveillance, monitored consensual recordings, spoken with undercover agents, conducted hundreds of investigative interviews, and executed hundreds of search and arrest warrants. I have received specialized training in these areas through my completion of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center in Glynn County, Georgia. I also received specialized training in criminal investigations at the U.S. Capitol Police Academy, the Fairfax County Police Academy, and the United States Secret Service Training Center. I have served as the lead investigator in numerous immigration and naturalization investigations. Prior to my present specialized assignment, I served as an agent with the U.S.

Secret Service for a period of seven years. I have a total of 19 years of experience as a law enforcement officer.

2. I am familiar with the information in this Affidavit. This Affidavit is based upon information from several sources, including personal observations, training and experience, witness interviews, documents and financial records, publicly available information, information contained in different government databases maintained by HSI and U.S. Citizenship and Immigration Services ("USCIS"), including the Alien file ("A-file") for **MARKO KOCIC** ("**KOCIC**"). I have also received information from other agents and law enforcement officers. This Affidavit is offered for the sole purpose of establishing probable cause for a criminal complaint and arrest warrant. It does not include, and is not intended to include, each and every fact known to the United States.

3. Based on my training and experience, and as set forth in this Affidavit, I submit that there is probable cause to believe that from in or about August 2013 through in or about December 2015, in the Eastern District of Virginia and elsewhere, the defendant, **KOCIC**, did knowingly subscribe as true under the penalty of perjury pursuant to 28 U.S.C. § 1746, false statements with respect to material facts in an application which is required by the immigration laws and regulations, to wit, a Form I-751, Petition to Remove Conditions on Residence, and supporting documentation, which the defendant then knew were false, in that he falsely attested that his marriage to S.A.R. was entered into in good faith, that the reason the marriage ended was a purported affair by S.A.R., and that the documents being provided to USCIS in support of the I-751 were true and accurate, all of which were submitted to USCIS, an agency of the United States, and subsequently affirmed as true and accurate under oath to a U.S. government official by **KOCIC** when interviewed by USCIS in 2015, all in violation of 18 U.S.C. § 1546(a).

## PROBABLE CAUSE

4. Aliens who marry U.S. citizens are eligible for certain immigration benefits under U.S. immigration laws, upon submission and approval of an application and supporting documentation to USCIS. To obtain such benefits, aliens must typically be sponsored by the U.S. citizen spouse, through the filing of a Form I-130, Petition for Alien Relative and must also file Form I-485, Application to Register Permanent Residence or Adjust Status. Another document that is required as part of the application for immigration benefits is the G-325A, Biographic Information. A G-325A form must be completed for both the alien and U.S. citizen spouse. These forms are signed under penalties of perjury; such forms, including the Form I-130, warn applicants that providing false or fraudulent information may result in the denial of the immigration benefit, as well as criminal penalties. USCIS relies upon the information provided by the sponsor and alien in deciding whether to award immigration benefits. If USCIS approves the I-130 and I-485 for an alien who is married to a U.S. citizen within two years of the date of the marriage, the alien becomes a lawful permanent resident ("LPR") with conditions, which is also known as a conditional green card holder. In order to have those conditions removed, a prerequisite for becoming a U.S. citizen, a Form I-751 must be filed. When the alien's status is based on a marriage to a U.S. citizen, USCIS will typically examine the validity of that relationship before approving the Form I-751; if the alien and U.S. citizen are divorced, the alien still has the burden of showing that the marriage was bona fide and entered into in good faith. Based on conversations with USCIS officers and my training and experience, I know that it is material to USCIS if the marriage was not bona fide. I also know that USCIS would want to know if the alien were causing the submission of false and fraudulent documents to USCIS, such as documents designed to substantiate a fraudulent marriage. Generally, a Form I-751 must be

3

substantiated with supporting documentation, such as tax returns, evidence of cohabitation, and other evidence that the alien and U.S. citizen were in fact married.

5. When an application for immigration benefits is based on a purported marriage to a U.S. citizen, information about where the alien and U.S. citizen spouse lived, with whom they resided, and the dates and origins of the romantic relationship are material to USCIS in adjudicating the application. For example, I know from my training and experience investigating immigration fraud that USCIS will deny applications for immigration benefits if it determines that there was no bona fide marriage, such as in a case where the alien pays the U.S. citizen to marry the alien, so that the alien can then obtain immigration benefits based on that marriage. To make a sham marriage appear legitimate, I know that individuals engaged in marriage fraud will often seek the assistance of others, including friends and family, to submit letters, pictures, or other evidence that the marriage is legitimate. I also know that individuals engaged in immigration fraud based on marriage will often rehearse and prepare for questioning by U.S. government employees.

6. Based on my training and experience in investigating immigration crimes, and conversations with other agents, I am familiar with indicia of fraudulent marriages entered into for the purpose of evading provisions of U.S. immigration laws. I am also familiar with the methods that such individuals and their co-conspirators use or attempt to use to conceal their criminal conduct from the United States government, including USCIS officers who review and approve applications for immigration benefits. Such methods include providing false information about the purported relationship, including the process of meeting, history, and timeline, as well as about the true locations and durations at which the individuals lived during the relationship and/or marriage.

7. **KOCIC** is an alien and national of Serbia. **KOCIC** entered the United States on or about May 25, 2010 on a J-1 (exchange visitor non-immigrant) visa, which is for individuals approved to participate in work-and-study-based exchange visitor programs. On or about September 21, 2010, **KOCIC** filed a Form I-539 to change his non-immigrant status from a J-1 to a B-2 visa, which permits tourists to visit the United States temporarily. **KOCIC** was granted a B-2 status from in or about November 2010 until in or about March 2011, during which time **KOCIC** was working in the United States without employment authorization.

8. According to records and witnesses, **KOCIC** has been married to S.A.R., a U.S. citizen, since May 2011. S.A.R. was first introduced to **KOCIC** through a mutual acquaintance in early 2011; **KOCIC** paid S.A.R. $2,000 in cash at this meeting in exchange for her agreement to marry **KOCIC** so that **KOCIC** could receive marriage-based immigration benefits. **KOCIC** ultimately promised to pay S.A.R. between $8,000 and $10,000 for her participation in the fraudulent marriage. **KOCIC** and S.A.R. met again in-person to discuss the marriage arrangement in greater detail; **KOCIC** also showed S.A.R. photos in his possession of other couples who had entered into similar fraudulent marriages. These are the only two times **KOCIC** and S.A.R. met prior to entering into the fraudulent marriage.

9. After S.A.R. and **KOCIC** were married, they submitted a fraudulent Form I-130 and a fraudulent Form I-485. For example, these petitions falsely represented that **KOCIC** and S.A.R. lived together.

10. **KOCIC** and S.A.R. also fabricated evidence that was submitted to USCIS, including photographs designed to show that **KOCIC** and S.A.R. were in a bona fide relationship.

11. On or about May 9, 2012, **KOCIC** and S.A.R., who was eight months pregnant

5

with W.C.J.'s baby, appeared for an interview at the USCIS Washington Field Office in Fairfax, Virginia regarding the pending Forms I-130 and I-485. Both individuals were placed under oath and fraudulently attested that they resided together in a bona fide marriage at 6526 Bowie Drive, Springfield, Virginia, 22150. In reliance on the I-130, I-485, supporting documentation, and statements made during the interview, USCIS approved the petitions and **KOCIC** became a conditional LPR based on his marriage to S.A.R.

12. Based on my training and experience, **KOCIC** and S.A.R.'s marriage has many indicia of a fraudulent or sham marriage entered into for the purpose of fraudulently obtaining immigration benefits. For example, the investigation has revealed that **KOCIC** and S.A.R. did not invite family to the wedding, did not go on a honeymoon, did not consummate the marriage, never lived together, maintained separate residences throughout the marriage, had romantic relationships with others during the marriage with the consent of their spouse, and met shortly before getting married. S.A.R., who was experiencing financial difficulties at the time, lived in an apartment in Richmond, Virginia with her actual boyfriend at the time, W.C.J; rent for this apartment was approximately $749 a month. **KOCIC** provided S.A.R. with $500 a month for approximately six or seven months to help S.A.R. pay for the rent of the Richmond apartment. **KOCIC** never lived with S.A.R. in Richmond and S.A.R. never lived with **KOCIC** in Alexandria or Springfield, Virginia, where **KOCIC** claimed to have lived. Further, **KOCIC** knew that S.A.R. was pregnant with another man's child and had his own romantic relationships during his marriage to S.A.R. The investigation has also revealed that the divorce was not the result of an affair. Rather, based on my training and experience, I believe this false explanation was offered to USCIS to explain the divorce and attempt to make the original marriage appear to be bona fide.

13. **KOCIC** and S.A.R. got divorced in March 2013.

14. In or about August 2013, **KOCIC** submitted a false and fraudulent Form I-751 to USCIS, which he signed under penalty of perjury. **KOCIC** also caused the submission of false and fraudulent supporting documentation to explain the divorce and substantiate his marriage to S.A.R. The supporting documentation included a joint lease for **KOCIC** and S.A.R. for an apartment in Richmond, Virginia; a false and fraudulent joint federal income tax return for the 2011 tax year; a false sworn statement by S.A.R. in which S.A.R. stated that she began dating **KOCIC** in 2010, married **KOCIC** for love, and later had an affair, which caused the end of the marriage; statements for the joint bank account of **KOCIC** and S.A.R.; and utility bills for the apartment where **KOCIC** and S.A.R. purportedly lived together.

15. The investigation has revealed that **KOCIC** never lived at the Richmond apartment for which he provided the lease. Further, the joint tax return was filed and the joint bank account was created for the purpose of making the marriage appear bona fide. S.A.R.'s sworn statement is also false and fraudulent.

16. My investigation, including witness interviews, has revealed that one of the purposes of **KOCIC's** marriage to S.A.R. was so that **KOCIC** could fraudulently seek immigration benefits and enable him to stay in the United States. On the Form I-751, **KOCIC** attests under penalty of perjury that he entered the marriage in good faith and that the marriage was not for the purpose of procuring an immigration benefit.

17. In or about 2015, S.A.R. admitted that the purpose of the marriage was so that **KOCIC** could seek immigration benefits based on that marriage, and in or about 2017, that various photographs taken and submitted to USCIS to substantiate the marriage were staged and not indicative of any real marriage or relationship. According to at least one other witness who

7

knew **KOCIC** during his marriage to S.A.R., **KOCIC** admitted that his marriage was for immigration benefits. To make the fraudulent marriage appear bona fide, a joint bank account was opened in Alexandria and fraudulent joint taxes were filed. My investigation has revealed that S.A.R. never had access to the joint bank account, but was instructed to open it so it could be reported to USCIS to help substantiate the marriage. Similarly, the joint tax return lists a false address and does not list S.A.R.'s oldest child (of whom **KOCIC** is not the father), which in itself could have caused USCIS to question the validity of the marriage, particularly since S.A.R. had a second child with a man other than **KOCIC** during the marriage.

18. My investigation also revealed that **KOCIC** was in romantic relationships with multiple women during his marriage to S.A.R., including N.S., who met with S.A.R. and **KOCIC** to take staged photos of the couple at **KOCIC's** direction. The photos were provided to USCIS as proof of the purportedly bona fide marriage.

19. On December 7, 2015, **KOCIC** was interviewed by USCIS about the Form I-751 at the USCIS Washington Field Office in Fairfax, Virginia. During the interview, **KOCIC** was placed under oath, after which he affirmed the accuracy of the I-751. At least some of **KOCIC's** statements during the interview were designed to be consistent with the supporting documentation for the Form I-751, such as S.A.R.'s false and fraudulent statement. **KOCIC** also made various false, fraudulent, and misleading statements during the interview, including the following:

   a. **KOCIC** stated that he met S.A.R. for the first time in the summer of 2010 at Eden Nightclub in Washington, D.C. **KOCIC** also stated that he dated S.A.R. for almost a year before they decided to get married, however, the investigation has revealed that they only had two short in-person meetings to discuss the terms of

8

the fraudulent marriage, and for **KOCIC** to provide S.A.R. with cash in exchange for her agreement to marry **KOCIC**.

b. **KOCIC** stated that he initially believed he was the father of S.A.R.'s second child who was born during the marriage, however, the investigation has revealed that S.A.R. and **KOCIC** never consummated the marriage and never had a sexual relationship.

## CONCLUSION

20. Based on the information set forth above, I submit that there is probable cause to believe that in or about August 2013 through at least in or about December 2015, in the Eastern District of Virginia and elsewhere, the defendant, **MARKO KOCIC**, committed a violation of 18 U.S.C. § 1546(a).

BRANDON H CREECH
_____
Brandon H. Creech
Special Agent, Homeland Security Investigations
U.S. Immigration and Customs Enforcement

Subscribed and sworn to electronically on the 18th day of October, 2017.

_____
The Honorable Ivan D. Davis
United States Magistrate Judge